SCHUETTE *et al. v.* ANDERSON.

*(Circuit Court, W. D. Pennsylvania.* May 6, 1890.)

PATENTS FOR INVENTIONS—NOVELTY—INFRINGEMENT—MANTEL FRAMES.
    Letters patent No. 389,340, granted September 11, 1888, to Schuette & Co., assignees of Robert B. Thompson, for an improvement in the construction of mantels, whereby one size of mantel frame may be fitted to fire-places of different sizes, do not disclose an invention of any primary character; the same general result having already been achieved. The patentees are to be confined to their specific form of construction; and their rights are not infringed by mantels made under letters patent No. 409,596, granted to William Anderson on August 20, 1889.

In Equity.
*W. Bakewell & Sons,* for complainants.
*Joseph R. Edson,* for defendant.

ACHESON, J. The plaintiffs, to whom, as assignees of Robert B. Thompson, the inventor, letters patent No. 389,340, for an improvement in the construction of mantels, were issued on September 11, 1888, sue the defendant for the alleged infringement of the same. The declared object of the invention is to provide a construction for mantels whereby one size of mantel frame may readily and accurately be fitted to fire-places of different sizes; and the specification thus states what the invention is:

"The improvement consists in combining with the frieze and pilasters of the mantel frame a lintel, extending below the frieze, and jambs extending inward from the pilasters, the jambs and lintel being connected by a tongue and groove slide joint, substantially in the manner hereinafter described, and as pointed out in the claim."

Then, after a reference to the accompanying drawings, follows this particular description:

"A designates a mantel, which may be constructed, as usual, of wood or kindred material, with a more or less ornamental frieze, B, and pilasters, C, forming an inclosure which is to be fitted to the fire-place, in front of which the mantel is to be arranged. To this end, in my improvement, a wooden or other lintel, D, having a longitudinal groove, D', in its lower edge, is fastened along the back of the frieze, B, with its lower edge extending below the same, so as to make the opening the desired height. Jambs, E, having tongues, F, on their upper ends adapted to the groove, D', in the lintel, are then cut to the desired length, and suitably fastened to the backs of the pilasters, C, with their tongues, F, resting in the groove, D', and at an equal and such a distance from the center line of the fire opening as to make the width of the same correspond to that of the fire-place."

The claim of the patent is in these words:

"A mantel constructed of a frieze, pilasters fixed to opposite ends thereof, a lintel secured detachably to the back of the frieze, and projecting below the same, and jambs secured detachably to the backs of the pilasters, projecting inward beyond the same, and connected by an adjustable slide joint to the detachable lintel, substantially as described."

The "adjustable slide joint" designated in the claim is, of course, the tongue and groove joint to which, as we have seen, such prominence is

given in the specification, first, in the general statement of the invention, thus, "the jambs and lintel being connected by a tongue and groove slide joint, substantially in the manner hereinafter described, and as pointed out in the claim," and then in the after and more complete description, viz.:

"* * * Lintel, D, having a longitudinal groove, D', in its lower edge.· * * * Jambs, E, having tongues, F, on their upper ends adapted to the groove, D', in the lintel, * * * and suitably fastened to the backs of the pilasters, C, with their tongues, F, resting in the groove, D'."

It is needless to state that this joint was old, and commonly used for many purposes in carpentry. The word "detachably" found in the claim does not elsewhere occur, nor does the specification contain any statement explanatory of the sense in which the term is used. But Fig. 2 of the drawings shows that the lintel is fastened to the back of the frieze, and the jambs to the backs of the pilasters, by means of screws; and, having regard to the avowed object of the invention, it may fairly be concluded that by the phrase "secured detachably" is meant by a fastening, by screws or otherwise, which admits of the ready removal and adjustment of the lintel and jambs without further disturbing the mantel frame.

In behalf of the plaintiffs, it is contended with great earnestness that the secure union of the non-adjustable parts of the mantel, viz., the frieze and pilasters, so as to form a strong, self-sustaining frame-work, which will bear transportation and handling, and is not at all dependent on the jambs and lintel for strength or support, is a distinguishing characteristic, if not the chief feature, of Thompson's invention. But, certainly, this is not to be discerned on the face of the patent. There is not a word in the body of the specification descriptive of the manner in which the frieze and pilasters are connected, and all on that subject we learn from the claim is that the pilasters are "fixed to the opposite ends" of the frieze. Nor do the drawings show how the frieze is connected with the pilasters. But, looking into the specification, we discover the inventor unfolding his invention in this wise:

"A designates a mantel, which may be constructed, *as usual*, of wood or kindred material, with a more or less ornamental frieze, B, and pilasters, C, forming an inclosure which is to be fitted to the fire-place in front of which the mantel is to be arranged. *To this end*, in my improvement, a wooden or other lintel * * * is fastened along the back of the frieze:"

—and then follows the further description, already quoted, respecting the lintel and jambs, and the mode of their adjustment to the fire-place. In my judgment, then, the substance of Thompson's invention as disclosed by his specification is the adjustability of the lintel and jambs whereby one size of mantel frame may readily be fitted to fire-places of different sizes. But certain is it that Thompson was not the first to devise an adjustable mantel. The patent to Thomas Scautlin, No. 245,095, dated August 2, 1881, which, it is noticeable, only professes to be for "improvements" in adjustable mantel-pieces, shows provision—*First*, for an adjustable shelf and outside jambs adapted to fit a variety of sizes of

chimney; and, *secondly,* "adjustable jambs to the fire-place opening adapted to increase or diminish the size of the fire-place, and fit a variety of sizes of grate baskets." And the patent to Robert H. Gudgeon, No. 254,868, dated March 14, 1882, shows such a construction of the parts constituting the chimney-piece, chimney-piece covering, mantel-board -and super-mantel, that by sliding one on the other they can be adjusted to different sizes or forms of grates or chimney openings "without requiring to be specially made, and without the assistance of skilled labor to fix them." The following clause of Gudgeon's specification has special significance here:

"The jambs, *a, a,* are provided at their upper ends, where joined by the frieze, with dove-tail grooves, *e, e,* to receive the ends of the frieze, *f, f,* formed with a dove-tail, *g,* at each end, to fit and slide in the said grooves."

Again, one of the exhibits in this case, illustrating the prior state of the art, is a mantel made in 1880, and a specimen of others made before and since, in which the lintel projects below the frieze, and is secured to the back of the frieze by screws, and the inner jambs, those next the fire-place, are secured by screws to the backs of the pilasters, and project inwardly beyond the same. That mantel has also outer grounds or jambs running the whole length of the pilasters and frieze, fastened thereto by screws, and binding them together. There is direct testimony that those mantels were made and sold 'as mantels which could be adjusted and fitted to fire-places of different sizes.

The mantels complained of as infringing the plaintiffs' patent are made under letters patent No. 409,596, granted to the defendant on August 20, 1889. In the construction of these mantels the lintel is not attached to the back of the frieze, but its ends are attached to the backs of the pilasters, and an air space is left between the lintel and frieze, which is claimed to be a great advantage; and the mode of connecting the jambs and lintel is this, viz., the lintel, at each end, on the rear side, for the distance of about one-third its length from the end, and for some inches upwardly from its lower edge, is rabbeted or "halved out," and each jamb, at its upper end and outer side, is correspondingly rabbeted or halved out; and these reduced parts of the lintel and jambs are lapped, and, when thus fitted, are secured together by wood screws which pass through the jambs from the rear side into the lintel. Now, if it be conceded that the plaintiffs' patent reveals a patentable invention, yet, surely, in view of the prior state of the art, it cannot be held to be an invention of any primary character. As we have seen, the same general result had already been achieved by prior patentees. At the most, Thompson was an improver only, and that, too, within narrow limits. The claim of the patent, then, is not to be interpreted so as to embrace the improvements of others. *Railway Co.* v. *Sayles,* 97 U. S. 554, 556; *Duff* v. *Pump Co.,* 107 U. S. 636, 2 Sup. Ct. Rep. 487. And, upon the whole, I am of opinion that the plaintiffs must be confined to the specific form of construction shown by their patent, and that the defendant does not infringe upon their rights. Let a decree be drawn dismissing the bill of complaint, with costs.